**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **No. 23-cr-00419-CJN** |
| | : | |
| **v.** | : | |
| | : | |
| **Marquete Alonzo MURRAY,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the Marquete Alonzo Murray, the defendant, be detained pending trial.

The government seeks the defendant's detention pursuant to 18 U.S.C. § 3142(f)(1)(C), because the defendant is charged with a serious drug felony, as well as § 3142 (f)(1)(E), because the defendant is charged with an offense involving a firearm. In addition, there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendants' appearance in this case and otherwise protect the community, pursuant to 18 U.S.C. § 3142(e)(1) and (e)(3)(A).

### APPLICABLE LAW

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Rebuttable Presumption**. Because the defendant in this case is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act (21 U.S.C. 801 et seq., and in this case, the Controlled Substances Act provides

1

for a maximum sentence of 40 years of imprisonment),[1] there exists a rebuttable presumption that no conditions or combination of conditions can effectively ensure the Defendant' appearance in this case and otherwise protect the community.  18 U.S.C. § 3142(e)(3)(A).

**Burden of Proof**. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988)). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required.  *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986).

**Required Finding**. Section 3142(e) requires pretrial detention where a court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." In making that determination, a court must consider "(1) the nature and circumstances of the offense charged . . . (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id*. § 3142(g); *see United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir., 2021) ("the court "shall order" a defendant detained before trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.").

**Purpose**. The constitutional justification for preventive detention under the Bail Reform Act is that "[w]hen the Government proves by clear and convincing evidence that an arrestee

---

[1] The charge involving 40 or more grams of fentanyl and 10 or more grams of an analogue of fentanyl carries a mandatory minimum term of 5 years and a maximum sentence of 40 years.  21 U.S.C. § 841(b)(B)(vi)).

presents an identified and articulable threat to an individual or the community, ... a court may disable the arrestee from executing that threat." *United States v. Munchel*, 991 F.3d 1282–83, quoting *Salerno*, 481 U.S. at 751.

**Admissibility**.  At a detention hearing, the government may present evidence by way of a proffer.  *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996). The "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The presentation of hearsay evidence is permitted. *Id.; United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). At the same time, a pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

**Burden of Persuasion**. The Government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight—even where it is presumed that those standards are satisfied. *See United States v. Thomas*, No. 21-cr-724, 2022 WL 203083 at *2 (D.D.C. Jan. 24, 2022) (Cooper, J.) (citing *United States v. Simpkins*, 826 F.2d94, 96 (D.C. Cir. 1987)).

## BACKGROUND

The defendant was indicted on Thursday November 30th, along with his 3 conspirators.

3

The defendant was charged in Count 1 with Conspiracy to Distribute and Possession with Intent to Distribute Fentanyl and cocaine, from about June 2023 through November of 2023, in violation of 21 USC § 846, 841(a)(1) and 841(b)(1)(C).  This offense carries a maximum term of imprisonment of 20 years.  *Id*. In Count 2, the defendant was charged with distribution of a detectable amount of Fentanyl within 1000 Feet of a school, in violation of 21 U.S.C. § 860(a), which doubles the statutory maximum to 40 years.

In Count 8, the defendant was also charged with possession with intent to distribute cocaine on July 19, 2023.

In Count 9, the defendant was also charged with possession with Intent to distribute a mixture and substance containing a detectable amount of Cocaine Base (§ 841(b)(1)(C), using, carrying, and possessing a firearm in furtherance of a crime of violence or a drug trafficking offense (18 USC § 924(c)(1)(A)(i)), and unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, 18 U.S.C. § 922(g)(1).  Counts 8, 9, and 10 all stem from a July 19, 2023 arrest of the defendant in response to a domestic disturbance.

On July 19, 2023, MPD officers responded a domestic violence call and encountered the defendant in a bedroom.  Officers observed a .40 caliber smith and Wesson handgun with an obliterated serial number, a loaded magazine with one round in the chamber (13 rounds total), and an additional 37 rounds inside of a nearby ammo box (all shown below).  Officers also discovered approximately 1.7 ounces of crack cocaine on the defendant's person in his front right pants pocket.

July 19, 2023: Marquete MURRAY Arrest

**Firearm is located at eye level within the most direct path of travel from the entrance of the room to the bed.**



July 19, 2023: Marquete MURRAY Arrest





July 19, 2023: Marquetel MURRAY Arrest





Under very similar circumstances, the defendant was arrested again on the evening of Wednesday, December 6, 2023, at 750 Kenilworth Terrace NE, apt 416. MPD officers responded early in the morning to reports of shots fired and domestic violence. Then much later in the day federal agents returned believing that the defendant, who had a pending arrest warrant, was inside. Agents arrested the defendant by the front door, and, a few hours later, searched the apartment for a gun, pursuant to an emergency search warrant obtained from this court. Agents recovered a Glock 26, with an extended magazine with a capacity of 17 rounds, as shown below, loaded with 1 round in chamber and 10 in the magazine (thus room for 6 more rounds)





Agents also found one shell casing, and two bullet holes – one through a wall and window,

shown above, and one through a wall shared with the unit next door.  Finally, agents recovered the defendant's cellphone, which was searched pursuant to the above referenced search warrant, and the cellphone contained text messages suggesting that the defendant had shot at the person he was texting.

  

Court-authorized search of cell phone reveals text messages with a phone number known to belong to MURRAY's girlfriend. Content     of text messages and timing indicates MURRAY had assaulted her and fired a weapon, "YOU DIDN'T PAY ATTENTION WHERE THE SHIT WAS GOING AT I COULDVE DIED". Photos were take    n the day after MURRAY's arrest

This sequence of events alone, the July 19, 2023, arrest and the very similar December 6, 2023 arrest, show that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

During the December 6 arrest agents also found legal paperwork, including a previous arrest warrant for the defendant from Fairfax County (May 27, 2021) for failing to comply with terms of supervised release (shown below).

8



Law enforcement also found a stay away order July 25, 2023, which ordered him to stay away from a certain individual, which, as discussed below, he violated.   The order also warned the defendant that he was not allowed to possess a firearm.



Documents located throughout the apartment with MURRAY's name.

9



Law enforcement also recovered a digital scale with white powder residue, as shown above.

Finally, during the defendant's transport, he acknowledged to law enforcement officers that he had read his indictment several days prior and was aware that there was an arrest warrant for him.

**The Investigation**

As the result of an investigation into a related case, law enforcement discovered a fentanyl distribution point in behind a shed on the 100 block of Yuma St. SE.  The investigation identified both the shed and the Yuma Block as a narcotics distribution point, wherein the narcotics dealers would typically congregate behind the shed while also walking out onto the street on the block to conduct drug sales.  A map of the specific area is shown below.



Agents set up surveillance and pole camera video monitoring and, for months, observed the defendant, along with Kevin Penn, Christian Simms, and Marquete Murray (the defendant's son), mixing, portioning out, and distributing fentanyl next to a shed near behind an abandoned house at 144 Yuma Street SE, next to a cul-de-sac.  Law enforcement then made controlled purchases from the four co-conspirators on August 3, September 6, September 14, September 21, September 28, and October 5, 2023.

On August 3, 2023, with the help of an undercover, law enforcement executed a controlled purchase from behind the shed.  The defendant was present, along with Kevin Penn.



*Figure 1: defendant counting currency while Penn retrieves additional Fentanyl*



*Figure 2: UC counts out currency while defendnat counts pre-packaged bags of Fentanyl*

As shown above, the UC provided $500.00 to the defendant, and the defendant in turn asked Penn for "seven," at which point, Penn retrieved an additional bag of fentanyl from underneath the siding of the shed, and then provided the UC with seven small bags of pre-packaged fentanyl. The defendant then provided the UC an additional 43 bags of pre-packaged fentanyl.  The defendant also provided his phone number to the UC - 202-500-5656.

The defendant and Penn then exchanged currency after the controlled purchase, as shown below, further demonstrating that they were working together.

12



Lab later revealed that the 50 bags, pictured below, contain fentanyl with a total weight of

6.2 grams.



*Figure 3: 50 bags of Fentanyl (6.18576 grams total weight)*

Additional analysis revealed that the transaction took place within 1000 feet of a school, as shown below.

21 U.S.C § 860 (Possession with Intent to Distribute fentanyl within 1,000 feet of a schoc
YUMA BLOCK



## ARGUMENT

### The Defendant Should Be Detained Pending Trial Because He Poses a Danger to the Community as well as a Risk of Flight

#### A. Nature and circumstances of the Offense

Since at least late June of this year, the defendant and three coconspirators, one of which being his father, have been trafficking in hundreds of baggies of fentanyl powder at the cul-de-sac at Yuma St. Southeast, less than 1000 feet from the Paramount Child Development Prep School, and directly adjacent to the Oxon Run Park running and bike trail. Washington DC is in the midst of an overdose epidemic due to fentanyl,[2] and the City's Mayor has just issued an executive order to address overdose "hot spots,"[3] as opioid overdose deaths this year are expected to surpass last

---

[2] Deaths due to Fentanyl in the District of Columbia currently outnumber homicides: Howard University Hospital reports that the District has close to 400 opioid related deaths per year, and the Metropolitan Police Department has reported that there were 203 homicides in the District during 2022.
[3] Washington Post, "Under pressure to do more, Bowser declares public emergency on opioids," (November 13, 2023) ("Opioid overdose deaths recorded by the city so far this year are on pace to surpass last year's record of 461.")

year's record of 461.  The defendant's offense conduct is exacerbating the situation in the Belleview and Washington Highlands neighborhoods of Southeast DC.  The school, the park and the running and bike trail are part of the Belleview and Washington Highlands communities, and all deserve protection from the defendant and his coconspirators.

The defendant's conduct during July 19, 2023 and December 6 2023 further demonstrates that the defendant also presents a serious risk to the people that he is close to.  The two incidents are clearly domestic incidents which were so serious that law enforcement was called on each occasion (July 19 and December 6).  Furthermore, during each occasion the defendant illegally possessed a firearm.  And on this last occasion, last week on December 6, the defendant fired shots inside of an apartment in a fit anger at his significant other.

**B. Weight of the Evidence against the Defendant**

Agents set up surveillance and pole camera video monitoring at a fentanyl distribution point on Yuma St SE, and they observed the defendant, along with his conspirators Kevin Penn, Christian Simms, and Alfonso Murray (the defendant's father), distributing fentanyl from behind an abandoned shed behind 144 Yuma Street SE, next to the cul-de-sac.  Law enforcement then made controlled purchases from the four co-conspirators on August 3, September 6, September 14, September 21, September 28, and October 5, 2023.  The defendant was present during the first of these transactions, and, critically, the transaction was videotaped.  A UC provided $500.00 to the defendant, the defendant then asked Kevin Penn for "seven," at which point Penn retrieved an additional bag of fentanyl from underneath the siding and provided the UC with seven small bags of pre-packaged fentanyl.  The defendant then provided the UC an additional 43 bags of pre-packaged fentanyl.  This is captured on video, and the UC was a witness.  Finally, the defendant even provided the UC with his phone number.

As concerns his charge of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (FIP), the fact that the defendant was arrested on December 6, 2023 with a gun only confirms the certainty that the gun recovered from the defendant's July 19, 2023 arrest was also his.  The defendant's previous conviction for a drug trafficking conspiracy in CR16-000121-11, in which he was sentenced to 33 months of imprisonment, serves as a predicate prior conviction, and also serves to show that he had knowledge that he had been convicted of a crime punishable by more than one year, as he was in fact incarcerated for more than one year.[4]

### C. History and Characteristics of the Defendant

The history and characteristics of the Defendant, further weighs in favor of detention.

First, the defendant's history shows that he is a flight risk.  Two bench warrants were executed against the defendant, in 2016-CF2-001645 and in in 2016-CF2-001645. Furthermore, as discussed above, during the transport of the defendant from his December 6, 2023 arrest, the defendant acknowledged to law enforcement that he was aware of the warrant for his arrest, but nevertheless failed to turn himself in.  A text message from his own phone further suggests that he was on the run ("they got me").  Finally, the defendant had in his possession the record of a previous arrest warrant from Fairfax County issued on May 27, 2021 because he failed to comply with terms of supervised release.

Second, the defendant history suggests that he is a danger to others and to himself. The Pretrial Services Report indicates that the defendant has nerve damage to his left had from being shot. This medical fact, together with the defendant's gun arrests and previous gun conviction

---

[4] Arguably, his previous conviction in 2016-CF2-001645 for carrying a pistol without a license, which resulted in an 18 month sentence, with 6 months suspended, also serves to show that the defendant was aware that he was prohibited.

raises questions as to whether the defendant was an active participant in the circumstances which led to him being shot.

**E. The Defendant is a Danger to the Community.**

Finally, the defendant is a danger to the community. The presumption under § 3142(e)(3)(A) establishes that narcotics trafficking is an "inherently dangerous activity." *See United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (Lamberth, J.). Indeed, the Sixth Circuit has noted that it "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the mill drug dealers, even without any indication that the defendant has engaged in violence." *United States v. Stone*, 608 F.3d 939, 947, n. 6 (6th Cir. 2010). The facts in this case validate that assumption.

The Defendant's release would clearly pose a very serious threat to the community – specifically to the Belleview and neighborhoods adjacent the Yuma block, where the defendant's fentanyl has ended up.   In addition, as noted above, the defendant's fentanyl distribution market is less than 1000 feet of a school, as shown below.



In this case, the defendant (along with his co-defendants) has been indicted for a count addressing this unique fact, under section 860(a) of Title 21.  As noted by the Seventh Circuit interpreting this statute, "Young students are more vulnerable to the tantalizing promises of drug pushers. Enhanced punishment of those who take advantage of this youthful vulnerability is certainly warranted." U.S. v. McKinney, 98 F.3d 974, 980 (C.A.7 (Ill.),1996).  In other words, the purpose of this statute (section 860 of Title 21) is to protect the youth, and this court should detain the defendant in this case to protect the youth of Belleview and Washington Highlands.

Finally, and more specifically, the defendant is a threat to his girlfriend.  As shown above, law enforcement recovered a July 25, 2023 stay away (2023 FD3 004858) ordering the defendant to stay away from the very same individual he apparently threated and shot at on December 6, 2023. The stay away also ordered the defendant not to possess firearms. As discussed and documented above, the defendant not only ignored these orders, but shot a wall and a window in his apartment on December 6, 2023, leading to his arrest.  The conduct was alarming and serious enough that at least three individuals called the police.  Furthermore, the text messages recovered from the defendant's own phone (from the afternoon of December 6, 2023) suggests that he also beat his girlfriend ("HOW COULD U KEEP BEATING ME") and that the shots were directed at or near her ("YOU DIDN'T PAY ATTENTION WHERE THE SHIT WAS GOING AT I COULDVE DIED").

## **CONCLUSION**

For the reasons noted above, the government respectfully submits that no condition or combination of conditions will reasonably assure the appearance of the defendant as required, nor the safety of the community in this case. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By: */s/ Jordan Leiter*
JORDAN LEITER
Special Assistant United States Attorney
D.C. Bar Number 999943
United States Attorney's Office
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-7499
Jordan.Leiter2@usdoj.gov